# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **KEVIN ROBERTS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:07CV2102 ERW/MLM** |
| | ) | |
| **MICHAEL BOWERSOX,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the court is the Petition Under 28 U.S.C. § 2254 by a Person in State Custody filed

by Petitioner Kevin Roberts ("Petitioner"). Doc. 1. Respondent filed a Response to Order to Show

Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 6. This matter was referred to

the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 3.

## I.
## BACKGROUND

By Indictment dated December 8, 1998, Petitioner was charged as follows: Count I, the

felony of statutory rape in the first degree, in that between January 1, 1992, and July 30, 1998, in the

City of St. Louis, Petitioner had sexual intercourse with L.B.[2] who was less than twelve years old,

and Count II, the felony of statutory sodomy in the first degree, in that between January 1, 1992, and

---

[1]    Petitioner named as Respondent the State of Missouri. Michael Bowersox is the warden of the South Central Correctional Center where Petitioner is incarcerated. Therefore, pursuant to 28 U.S.C. § 2254, Rule 2(a), the court has substituted Michael Bowersox as the named Respondent.

[2]    Although the Indictment names the victim, the court has substituted the victim's initials.

July 30, 1998, in the City of St. Louis, Petitioner had deviate sexual intercourse with L.B., who was less than twelve years old. Resp. Ex. C at 12-13.

Petitioner's first trial resulted in a hung jury and the court declared a mistrial. Resp. Ex. C at 5. The testimony at Petitioner's retrial was described as follows by the Missouri appellate court:[3]

> L.B., the victim, was three years old when Roberts began seeing L.B.'s mother, Yvonnia Brooks ("Ms. Brooks"). L.B. and Ms. Brooks are hearing-impaired and use sign language to communicate. Soon after meeting Roberts, Ms. Brooks, L.B., L.B.'s brother, and Roberts moved to an apartment on Tennessee Avenue in the City of St. Louis. Beginning when L.B. was five years old and while they were living on Tennessee Avenue, Roberts began touching L.B. in a sexual way. When L.B. was ten years old, the family moved to a house on Virginia Avenue, where L.B. testified the situation became even "worse." Roberts began to have sexual intercourse with L.B. L.B. testified Roberts had intercourse with her many times. L.B. was too scared to tell her mother.

> Shortly after L.B.'s twelfth birthday, Roberts moved out of the Virginia Avenue house. About six months later, a friend of L.B.'s mother noticed that L.B. began engaging in flirtatious and seductive behavior. L.B. told this friend that a man had sexually taken advantage of her and that she was too scared to tell her mother. This friend told Ms. Brooks and then reported the matter to the Division of Family

---

[3]    In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain, 464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d). Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

Service. L.B. was subsequently interviewed by the Children's Advocacy Center and by Dr. James Monteleone, a pediatrician and Director of Child Protection at Cardinal Glennon Children's Hospital, whose examination revealed evidence of sexual abuse.

At trial, Roberts testified in his own defense and denied touching L.B. inappropriately or that he raped her.

Roberts v. State, 232 S.W.3d 581, 582-83 (Mo. Ct. App. 2007).

Petitioner was found guilty as charged and sentenced to two concurrent terms of twenty years' imprisonment. Resp. Ex. C at 89-90, 106-108. Petitioner filed a direct appeal. Resp. Ex. A. The Missouri appellate court affirmed Petitioner's convictions. State v. Roberts, 83 S.W.3d 604 (Mo. Ct. App. 2002); Resp. Ex. D. Petitioner filed a pro se post-conviction relief motion. Resp. Ex. G at 3-8. Counsel was appointed and filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for Evidentiary Hearing. Resp. Ex. G at 13-37. The motion court denied the Amended Motion. Resp. Ex. G at 50-55. Petitioner appealed the decision of the motion court. Resp. Ex. E. The Missouri appellate court affirmed the denial of post-conviction relief on August 14, 2007. Roberts, 232 S.W.3d 581.

On December 21, 2007, Petitioner filed a § 2254 Petition in which he raises the following issues:

**(1)** Petitioner received ineffective assistance of counsel because trial counsel failed to "object" to the court's response to a question asked by the jury, because trial counsel failed to "request appropriate relief," and because trial counsel failed to "get medical records to refute [the] time of [the] alleged crime";

**(2)** The trial court erroneously instructed the jury in regard to the charge of statutory sodomy in the first-degree because the instruction submitted to the jury differed from the instruction submitted to the jury in Petitioner's first trial;

**(3)** Petitioner received ineffective assistance of counsel because trial counsel failed to investigate and present evidence relating to the protective order that the victim's mother, Yvonnia Brooks, unsuccessfully attempted to obtain against him;

**(4)** The testimony of L.B., Yvonnia Brooks, and Shirley Keyes was inconsistent with other evidence and the testimony of L.B. lacked probative value.

Doc. 1.

# III.
# EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly

presented to the state court. <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988).  "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim."  <u>Id.</u> (citation omitted).

In <u>Randolph v. Kemna</u>, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court."  The Eighth Circuit concluded, in <u>Randolph</u>, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court.  <u>Id.</u> at 404-405.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.  U.S. 411, 423-24 (1991)).

Petitioner argued in the appeal of his post-conviction relief motion that he received ineffective assistance of counsel because trial counsel did not object to the court's response to a question asked by the jury and because counsel did not offer an alternative response.  Petitioner did not allege, however, on appeal that he received ineffective assistance of counsel because his counsel failed to "get medical records to refute [the] time of [the] alleged crime."  As such, the court finds that Petitioner has procedurally defaulted that aspect of Ground 1 which addresses counsel's failure to obtain medical records.[4]  Petitioner has not suggested any basis upon which this procedural default should be excused.  The court finds, therefore, that the aspect of Ground 1 which addresses counsel's failure to obtain medical records should be dismissed.

In his second point on direct appeal Petitioner raised the issue of Ground 2 of his § 2254 Petition.  Thus, Petitioner has not procedurally defaulted Ground 2.

---

[4]     Petitioner acknowledged in the appeal of his post-conviction motion that the State's Exhibit 2 included L.B.'s medical records and that these medical records reflect L.B.'s statements to medical personnel. Resp. Ex. E at 35.

Petitioner alleged in his first point in the appeal of his post-conviction relief motion that he received ineffective assistance of counsel because trial counsel failed to investigate and present evidence relating to L.B.'s mother's attempt to obtain an order of protection. While Petitioner may not have phrased Ground 3 in his § 2254 Petition exactly as he stated this issue before the Missouri appellate court the court finds that there is sufficient similarity between Petitioner's first point on appeal and Ground 3 of his § 2254 Petition for the court to conclude that Petitioner has not procedurally defaulted Ground 3.

In Ground 4 of his § 2254 Petition Petitioner alleges that the testimony of L.B., Yvonnia Brooks, who is L.B.'s mother, and the testimony of another witness, Shirley Keyes, was inconsistent with other evidence and that L.B.'s testimony lacked probative value. Petitioner did not raise the issue of Ground 4 before the Missouri appellate court. Petitioner, therefore, has procedurally defaulted Ground 4. Petitioner has not suggested any basis upon which his procedural default of Ground 4 should be excused. The court finds, therefore, that Petitioner's Ground 4 should be dismissed.

In his first point on direct appeal Petitioner argued that the State failed to prove beyond a reasonable doubt the elements of first degree statutory sodomy. In support of this point Petitioner argued that L.B.'s testimony was contradictory and self-destructive. Resp. Ex. A at 22. Alternatively, the court will address on its merits that aspect of Ground 4 which addresses L.B.'s testimony.[5]

Additionally, the court finds that Petitioner's § 2254 Petition is timely filed.


# IV.
# STANDARD OF REVIEW

---

[5]        Petitioner did not make this argument in regard to Yvonnia Brooks or in regard to Shirley Keyes.

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the

merits in the state court." Id. at 412.  The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411.  "'Rather [the] application [by the state-court] must also be unreasonable.'"  Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411).  See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also  Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that

the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).")).

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Luebbers, 371 F.3d 458 (8th Cir. 2004). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

> [It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

## V.
## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." <u>Auman v. United States</u>, 67 F.3d 157, 162 (8th Cir. 1995) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). The "performance" prong of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u>

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. <u>Id.</u> at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." <u>Id.</u> at 697.

Additionally, the court notes that the Court stated in <u>Strickland</u>, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has articulated an exception to the rule articulated in <u>Strickland</u> that to prevail on an ineffective assistance of counsel claim a habeas petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Mickens v. Taylor</u>, 535 U.S. 162, 166 (2002) (citing <u>Strickland</u>, 466 U.S. at 694). The Court held in <u>Mickens</u> that:

We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case- by-case inquiry is unnecessary. <u>See Cronic</u>, supra, at 658-659, 104 S.Ct. 2039; <u>see also Geders v. United States</u>, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); <u>Gideon v. Wainwright</u>, 372 U.S. 335, 344-345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). But only in "circumstances of that magnitude" do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict. <u>Cronic</u>, supra, at 659, n. 26, 104 S.Ct. 2039.

<u>Id.</u>

# V.
# DISCUSSION

**Ground 1 - Petitioner received ineffective assistance of counsel because trial counsel failed to "object" to the court's response to a question asked by the jury and because trial counsel failed to "request appropriate relief" :**

During deliberations the jury posed the following question to the court in regard to the charge of statutory sodomy in the first degree: "The specific charge states the defendant used his penis in her mouth. Under the definition of sodomy, a dildo, finger, or penis could be used on the victims [sic] mouth, tongue or anus. Is this the only accusation that he can be charged [with] for statutory sodomy?" Roberts, 232 S.W.3d at 584.

The trial court responded to the jury: "You must be guided by the instructions as the Court has given them to you." Id.

In Ground 1 Petitioner contends that his counsel should have objected to the court's response and that counsel should have submitted an alternative response to the jury's inquiry.

The court first notes that Mo. Rev. Stat. § 566.062 provides as follows:

1. A person commits the crime of statutory sodomy in the first degree if he has *deviate sexual intercourse* with another person who is less than fourteen years old.
2. Statutory sodomy in the first degree or an attempt to commit statutory sodomy in the first degree is a felony for which the authorized term of imprisonment is life imprisonment or a term of years not less than five years, unless in the course thereof the actor inflicts serious physical injury on any person, displays a deadly weapon or dangerous instrument in a threatening manner, subjects the victim to sexual intercourse or deviate sexual intercourse with more than one person, *or the victim is less than twelve years of age*, in which case the authorized term of imprisonment is life imprisonment or a term of years not less than ten years.

(emphasis added).

Further, Mo. Rev. Stat. § 566.010 defines deviate sexual intercourse and states:

(1) "Deviate sexual intercourse", any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim;

Prior to addressing Petitioner's claims of ineffective assistance of counsel the Missouri appellate court held:

> To prove ineffective assistance of counsel, Roberts must show that his counsel "failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances," and that he was prejudiced by his counsel's failure to competently perform. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice exists when there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. Id. at 694, 104 S.Ct. 2052. The benchmark for judging ineffectiveness is whether counsel's conduct so undermined the adversarial process that the trial cannot be relied upon as having produced a just result. State v. Miller, 935 S.W.2d 618, 624 (Mo. App. W.D.1996).

Roberts, 232 S.W.3d at 583.

Upon specifically addressing the merits of Ground 1 the Missouri appellate court held as follows:

> In his first point on appeal, Roberts argues the motion court clearly erred in denying, without an evidentiary hearing, his claim that his trial counsel was ineffective for failing to object to the court's response to a jury question because the response did not answer the question, correct the jury's misapprehension of the law or alleviate the juror's concerns. Roberts also alleged that his counsel was ineffective because he failed to offer the court a response which informed the jury of its responsibility to convict only if the jury believed Roberts committed the acts alleged in the verdict director for that offense.

> The verdict director given to the jury for the charge of statutory sodomy in the first degree stated as follows, in pertinent part:

> > As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

> > First, that on or about January 1, 1996 thru July 30, 1998, in the City of St. Louis, State of Missouri, the defendant *placed his penis in the mouth* of [L.B.], and

> > Second, that such conduct constituted *deviate sexual intercourse,*

> > and

Third, that at that time [L.B.] was *less than twelve years old*, then you will find the defendant guilty under Count II of statutory sodomy in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term 'deviate sexual intercourse' means any act involving the genitals of one person and the mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person....

...

The motion court rejected Roberts's claim of ineffective assistance of counsel due to counsel's alleged failure to object to the court's response to the jury question and his failure to propose an alternative response. Specifically, the motion court stated:

> The instruction set forth the specific conduct charged and the instruction stated that unless the jury found 'beyond a reasonable doubt each and all of these propositions, you must find defendant not guilty of that offense.' It is apparent that this instruction directly answered the question and that the instruction provided the guidance movant claims should have been given in response to that question. The Court does not believe it would have been appropriate to inquire of the jurors about their discussions during deliberations where the jury was properly instructed.

The response to a jury question is within the trial court's sound discretion, "and the practice of exchanging communications between the judge and jury is not commended." State v. Guinn, 58 S.W.3d 538, 548 (Mo. App. W.D.2001). "Neutral and generic responses about being guided by the evidence presented and to follow the instructions previously given are therefore not only the safest but the most favored [response]." Id. When a trial court gives instructions to the jury that are correct, clear and unambiguous, then it is not improper for the trial court to instruct the jury to be guided by those instructions. Id.

Here, the statutory sodomy instructions given to the jury were correct, clear and unambiguous. The instructions clearly set forth the elements that the jury would have to find in order to convict Roberts of statutory sodomy and the jury is presumed to follow these instructions. Because we find these instructions to be proper, the trial

court did not err in directing the jury to be guided by these instructions. As such, any objection Roberts's trial counsel would have made regarding the court's response to the question would have been without merit and his trial counsel was not ineffective for failing to do so. Point denied

Roberts, 232 S.W.3d at 584-85 (emphasis added).

Pursuant to Williams this court will consider federal law applicable to Petitioner's Ground 1. The court has set forth above the two-pronged test of Strickland which is applicable to determining whether a habeas petitioner received ineffective assistance of counsel.

The Supreme Court holds that instructional error is generally a matter of state law and that it only rises to the level of a constitutional issue where the instruction, by itself, so infected the trial in a manner which resulted in a conviction which violates due process. See Estelle v. McGuire, 502 U.S. 62, 72 (1991) (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]'"). The Court in Estelle further held that:

> It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. Cupp v. Naughten, supra, 414 U.S., at 147, 94 S.Ct., at 400-01. In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." Ibid.

502 U.S. at 72-73.

The United States Supreme Court holds that to satisfy due process a jury instruction must require the state to prove beyond a reasonable doubt the elements of the crime with which a defendant is charged. Sandstrom v. Montana, 442 U.S. 510, 513 (1979); Gary v. Dormire, 256 F.3d

753, 758-59 (8th Cir. 2001). Further, the due process clause is violated where "'the jury applies a challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.'" Id. at 759 (quoting Boyde v. California, 494 U.S. 370, 386 (1990)).

Also, federal law provides in regard to jury instructions that:

> While a defendant is entitled to a proper theory of defense instruction, United States v. Jerde, 841 F.2d 818, 820 (8th Cir.1988), a district court has broad discretion to formulate jury instructions. It does not abuse its discretion by rejecting a proposed theory of defense instruction if the instructions as a whole adequately and correctly cover the substance of the request. United States v. Long, 977 F.2d 1264, 1272 (8th Cir.1992).

United States v. Felici, 54 F.3d 504, 506 (8th Cir. 1995).

A federal appellate court will not reverse a conviction when the jury instructions given to the jury correctly stated the law. United States v. Paul, 217 F.3d 989, 997 (8th Cir. 2000). Instructional errors which rise to the level of constitutional violations cannot be the basis for federal habeas relief if they are harmless. Seiler v. Thalacker, 101 F.3d 536, 539 (8th Cir.1996).

In regard to Petitioner's Ground 1 the Missouri appellate first considered that the two-pronged test of Strickland was applicable to determining whether Petitioner received constitutionally ineffective assistance of counsel. The court then concluded that the relevant instructions given to the jury clearly and accurately set forth the elements of statutory sodomy; that under such circumstances any objection which trial counsel would have made would not have been sustained; that the trial court's response to the jury's question was within the court's sound discretion; and that, therefore, counsel was not ineffective for failing to object to the court's response to the jury's question. As such, the court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 1 is not contrary to federal law and that it is a reasonable application of federal law. See Williams, 529 U.S. 412-13; Estelle, 502 U.S. at 72; Strickland, 466 U.S. at 689; Sandstrom,

442 U.S. at 513; <u>Gary</u>, 256 F.3d at 758-59; <u>Felici</u>, 54 F.3d at 506. The court further finds that Petitioner's Ground 1 is without merit and that relief on its basis should be denied.

**Ground 2 - The trial court erroneously instructed the jury in regard to the charge of statutory sodomy in the first-degree because the instruction submitted to the jury differed from the instruction submitted to the jury in Petitioner's first trial:**

The Missouri appellate court addressed the issue of Petitioner's Ground 2 without comment. As such a pre-AEDPA standard is applicable to this court's review of Ground 2. See <u>Robinson</u>, 278 F.3d at 865.

The court has set forth above, in the context of the Missouri appellate court's addressing the issue of Petitioner's Ground 1, the elements of statutory sodomy in the first degree under Missouri law, Mo. Rev. Stat. § 566.062, as well as the definition of deviate sexual intercourse under Missouri law, Mo. Rev. Stat. § 566.010.

In Petitioner's first trial the verdict director for statutory sodomy in the first degree instructed the jury to find Petitioner guilty if it found: (1) that he "placed a sexual instrument in the vagina of [the victim]"; (2) that his act constituted deviate sexual intercourse; and (3) that the victim was less than twelve years old when it happened. Resp. Ex. C at 37. As stated above, the jury was unable to reach a verdict and the court declared a mistrial.

In Petitioner's second trial, as described above in regard to the Missouri appellate court's discussion of the issue of Petitioner's Ground 1, the verdict director for statutory sodomy in the first degree instructed the jury to find Petitioner guilty if it found, in pertinent part, that he "placed his penis in the mouth of L.B." Thus, the verdict director on statutory sodomy in the first degree in Petitioner's second trial differed from the verdict director in his first trial.

The court has set forth above federal law applicable to a determination of whether a jury instruction rises to the level of a constitutional violation. First, in Petitioner's second trial the jury

instruction for statutory sodomy in the first degree accurately stated the law, including the elements of statutory sodomy in the first degree and the statutory definition of deviate sexual intercourse. See Paul, 217 F.3d at 997. Second, the record does not reflect that the jury interpreted the instruction in a manner which violated the Constitution nor does the record establish that the instruction violated any constitutional right. See Estelle, 502 U.S. at 72-73. As such, pursuant to a pre-AEDPA standard, the court finds that Petitioner's Ground 2 is without merit and that relief on its basis should be denied. See Robinson, 278 F.3d at 865-66.

**Ground 3 - Petitioner received ineffective assistance of counsel because trial counsel failed to investigate and present evidence relating to the protective order that the victim's mother, Yvonnia Brooks, unsuccessfully attempted to obtain against him:**

As stated above the court will assume that Petitioner intends to raise in Ground 3 the same issue which he raised in his second point in the appeal of his post-conviction relief motion. Upon addressing this issue the Missouri appellate court held:

In his second point on appeal Roberts argues the motion court clearly erred in denying, ... , his claim that his trial counsel was ineffective for failing to investigate and present evidence relating to the protective order that Ms. Brooks unsuccessfully attempted to obtain against him. Roberts argues the evidence of the protective order would have impeached Ms. Brooks by demonstrating that (1) the petition for the order of protection did not mention the sexual abuse of L.B., impeaching her credibility; (2) Roberts was no longer staying with the Brooks family in March 1998, contradicting L.B.'s claim that the last incident of abuse occurred in July 1998; and (3) Ms. Brooks and L.B. were biased against him.

The motion court rejected Roberts's claim, finding that:

To prevail on a claim that counsel was ineffective for failing to present impeachment evidence, movant must show that the failure was outside the realm of trial strategy and that the evidence would have presented a viable defense. Movant must show specific discrepancies that could have been pointed out through preparation; otherwise the court is merely speculating as to prejudice....

This Court does not believe the failure of defense counsel to present evidence regarding the order of protection proceeding had an impact on the outcome of the case. This petition does not state if or when movant allegedly moved out of the

dwelling, contains no assertions relevant to whether he was residing in the dwelling in July 1998, does not contain any evidence inconsistent with [Ms. Brooks's] statement that she reported the conduct when she found out about it and movant has presented no evidence regarding what occurred at the hearing on a full order of protection.

We agree with the motion court. "[The failure to impeach a witness will [not] constitute ineffective assistance of counsel unless such action would have provided a viable defense or changed the outcome of the trial." State v. Ferguson, 20 S.W.3d 485, 506 (Mo. banc 2000), cert. denied, 531 U.S. 1019, 121 S.Ct. 582, 148 L.Ed.2d 499.

Here, Roberts's defense at trial was that he did not abuse L.B. Any effort by his trial counsel to investigate and introduce evidence that Ms. Brooks attempted, without success, to obtain an order of protection against him would not have aided his defense or changed the outcome of the trial. As the motion court pointed out, Ms. Brooks's petition for an order of protection did not confirm if and when Roberts moved out of that residence or if he was living at that residence during the time L.B. was being abused.

Roberts also submits in this point that Ms. Brooks could have been impeached by her failure to mention in the petition that Roberts sexually abused L.B. However, the petition is not inconsistent with Ms. Brooks's testimony at trial that she reported the sexual abuse of L.B. by Roberts when she learned of it, which was subsequent to the time of the filing of the petition for protective order.

Finally, Roberts argues that the petition would have demonstrated Ms. Brooks's bias against him. However, Ms. Brooks had already testified at trial that she and Roberts no longer got along and argued a great deal, particularly about Roberts not working, not paying the bills and always drinking.

As such, Roberts's trial counsel was not ineffective for failing to investigate and present evidence relating to the protective order, and the motion court's findings are not clearly erroneous. Point denied.

Roberts, 232 S.W.3d at 585-86.

As set forth above, the Missouri appellate court considered that the two-pronged test of Strickland is applicable to Petitioner's claims of ineffective assistance of counsel. In regard to Petitioner's Ground 3 the Missouri appellate court considered that the failure of counsel to present evidence regarding the order of protection did not effect the outcome of Petitioner's case. In this regard the court considered that Ms. Brook's attempt to obtain an order of protection did not prove

that Petitioner moved out of the residence or that he was living at the residence at the time L.B. was abused. To the extent that Petitioner argued that the attempt to obtain an order of protection would show Ms. Brook's bias, the Missouri appellate court noted that Ms. Brooks testified that she and Petitioner no longer got along. Thus, evidence of the order of protection was not necessary to show Ms. Brook's bias against Petitioner. As such, the Missouri appellate court concluded that pursuant to the second prong of Strickland, Petitioner was not prejudiced by counsel's conduct regarding the order of protection. The court finds, therefore, that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law. See Williams, 529 U.S. 412-13. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.

**Ground 4 - L.B.'s testimony was inconsistent with other evidence and lacked probative value:**

The court has found above that Petitioner has procedurally defaulted Ground 4 in its entirety. The court also stated that it would address, alternatively, that aspect of Ground 4 which addresses L.B.'s testimony. As stated above Petitioner challenged the consistency and probative value of L.B.'s testimony when arguing on direct appeal that the evidence was insufficient to convict him of statutory sodomy in the first degree. The Missouri appellate court addressed Petitioner's direct appeal without comment. As such, a pre-AEDPA standard is applicable to Petitioner's Ground 4. See Robinson, 378 F.3d at 865-66.

This court has set forth above the appellate court's description of the testimony at Petitioner's trial including L.B.'s testimony as to the nature of Petitioner's conduct and when and where Petitioner engaged in this conduct. This court notes that when asked if Petitioner ever touched her when she lived on Virginia, L.B. testified that he did, "once in awhile." Resp. Ex. I, Tr. 561. L.B.

further testified that commencing when she was five years old and living on Tennessee, Petitioner touched her "everywhere" and that he would touch her "in [her] private" and her breast. Tr. 548-50. When asked what he did when he touched her L.B. testified that Petitioner had a "fake dick" and that he made her look at his "Playboy books" and "suck the dick." Tr. 562. When asked if Petitioner made her suck the real or fake dick, L.B. testified as follows: "First - first, it was the fake one and then it was the real one." Tr. 562. When asked what else happened L.B. testified that Petitioner would insert his finger in her private part area and then he would insert his penis. Tr. 663.

To the extent there were conflicts in L.B.'s testimony, federal law provides that it is the responsibility of the jury to "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that ... the evidence is to be considered in the light most favorable to the prosecution." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003) ("We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.") (internal citations omitted); Weston v. Dormire, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime.") (citing Jackson, 443 U.S. at 319, 321, 324; Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir.2000)). To the extent Petitioner's Ground 4 addresses the sufficiency of the evidence against him, the United States Supreme Court stated in Wright v. West, that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" 505 U.S. 277, 283-84 (1992) (citing <u>Jackson</u>, 443 U.S. at 319 (1979) (emphasis in original). <u>See also</u> <u>Scott v. Jones</u>, 915 F.2d 1188, 1190 (8th Cir. 1990); <u>Haymon v. Higgins</u>, 846 F.2d 1145, 1146 (8th Cir. 1988).

Considering the testimony at Petitioner's trial and the applicable law, the court finds, pursuant to a pre-AEDPA standard, that Petitioner's Ground 4 is without merit and that relief on its basis should be denied. <u>See</u> <u>Jackson</u>, 443 U.S. at 319; Whitehead, 340 F.3d at <u>536</u>; <u>Robinson</u>, 278 F.3d at 865-66.

## VI.
## CONCLUSION

For the reasons stated above, the court finds that to the extent Petitioner alleges in Ground 1 that counsel was ineffective for failing to obtain medical records, Ground 1 is procedurally defaulted and that, otherwise, Ground 1 is without merit. The court also finds that Petitioner has procedurally defaulted Ground 4. The court further finds that Petitioner's Grounds 2 and 3 and, alternatively, that aspect of Ground 4 which addresses L.B.'s testimony are without merit. The court finds, therefore, that Petitioner's § 2254 Petition should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appeal ability in this matter. <u>See</u> <u>Tiedeman v Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED**; Doc. 1.

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appeal ability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 22nd day of October, 2008.